IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES JACOBS, etc.,                     )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )      No.  05 C 143
                                        )
ROBERT P. BREMNER, et al.,              )
                                        )
                    Defendants.         )

MEMORANDUM OPINION AND ORDER

James Jacobs ("Jacobs") has filed a class-action Complaint
against a number of defendants acting as mutual fund directors,
advisors and affiliates of the Nuveen Family of Funds.  Alleging
that defendants failed to ensure that the funds participated in
dozens of securities class action settlements for which they were
eligible, Jacobs seeks to bring a direct action on behalf of all
shareholders in a number of the Nuveen funds, including some
other than those in which he has invested.

In particular Jacobs asserts five claims: (1) state law
breach of fiduciary duty, (2) state law negligence, (3) violation
of Section 36(a) of the Investment Company Act of 1940 ("Act"),[1]
(4) violation of Section 36(b) and (5) violation of Section
47(b).  Federal jurisdiction is proper under the Act and 28

_____

    [1]  As do virtually all other opinions involving the Act,
this opinion will refer to its relevant provisions by their
original internal section numbers--15 U.S.C. §80a-35(a) as
"Section 36(a)," 15 U.S.C. §80a-35(b) as "Section 36(b)," and 15
U.S.C. §80a-46(b) as "Section 47(b)"--rather than their codified
numbers in Title 15.

U.S.C. §1331(a), and supplemental jurisdiction extends to the state law claims under 28 U.S.C. §1367(a)("Section 1367(a)") because they arise out of a common nucleus of operative fact.

Defendants have responded with a Fed. R. Civ. P. ("Rule") 12(b)(6) motion challenging the legal sufficiency of all five counts. For that purpose the plaintiff's allegations, coupled with reasonable inferences, must be accepted as true (Bressner v. Ambroziak, 379 F.3d 478, 480 (7th Cir. 2004), and dismissal is warranted only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" (Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). For the reasons stated in this opinion, (1) the motion is granted in its entirety as to Jacobs' federal claims and (2) the state claims are dismissed without prejudice, so that the action itself is dismissed.

Before this Court turns to the substance of each of Jacobs' federal claims, one preliminary matter requires attention. Defendants argue that Jacobs lacks standing to bring claims on behalf of investors in funds that Jacobs admits that he does not own and has never owned. That issue would require immediate resolution before any consideration of the merits if it applied to all of Jacobs' claims, for a ruling adverse to Jacobs on that score would negate the existence of federal subject matter jurisdiction (Steel Co. v. Citizens for a Better Env't, 523 U.S.

2

83, 93-102 (1998)).

But it is undisputed that Jacobs invested in, and therefore does have standing to sue on behalf of all investors in, the Nuveen Large-Cap Value Fund (J. Mem. 5; D. Mem. 3),[2] and that means this Court can consider the merits of Jacobs' claims at least as to that fund. And because analysis leads to the conclusion that Jacobs' federal claims must be dismissed, the question of standing as to the other funds is rendered moot.

### Section 36(a)

In relevant part Section 36(a) provides:

> The [Securities and Exchange] Commission is authorized to bring an action in the proper district court of the United States...alleging that a person serving or acting in one or more of the following capacities has engaged within five years of the commencement of the action or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct....

As a threshold matter defendants argue that the clear statutory language does not permit Jacobs rather than the Commission to initiate a Section 36(a) claim. Beyond that, defendants submit that none of the conduct that Jacobs has alleged constitutes "a breach of fiduciary duty involving personal misconduct." Each of those contentions will be discussed in turn.

---

[2] References to the parties' submissions take the form "J." (for Jacobs, of course) and "D." (for defendants).

Private Right of Action

As with many statutes, the plain text of Section 36(a) does
not explicitly provide for a private right of action.
Nevertheless "[f]ederal courts have widely implied private causes
of action under the ICA [Act] for over thirty years," and that
general willingness extends to Section 36(a) (In re Nuveen Fund
Litig., No. 94 C 360, 1996 WL 328006, at *5 (N.D. Ill. June 11)
(collecting cases); see also J. Mem. 12 n.8).

To justify finding a private right of action in the absence
of specific statutory language, courts have typically relied on
the legislative history of amendments to the Act.  For example,
Congress amended the Act in 1980 to ensure that all of its
protections and provisions would apply to business development
companies as well as to mutual funds and investment companies.
In the course of doing so, the House Committee commented
specifically on a private right of action under Section 36(a)
(H.R.Rep. No. 96-1341, 96th Cong., 2d Sess. 28-29 (1980),
reprinted in 1980 U.S.C.C.A.N. 4800, 4811 (footnotes omitted)):

> The Committee wishes to make plain that it expects the
> courts to imply private rights of action under this
> legislation, where the plaintiff falls within the class
> of persons protected by the statutory provision in
> question.  Such a right would be consistent with and
> further Congress' intent in enacting that provision,
> and where such actions would not improperly occupy an
> area traditionally the concern of state law.  In
> appropriate instances, for example, breaches of
> fiduciary duty involving personal misconduct should be
> remedied under section 36(a) of the Investment Company
> Act.  With respect to business development companies,

4

the Committee contemplates suits by shareholders as
well as by the Commission, since these are the persons
the provision is designed to protect, and such private
rights of action will assist in carrying out the
remedial purposes of section 36.

Even before that, the Senate had addressed the issue of
private rights of action under Section 36(a) in the course of
adding Section 36(b) to the Act in 1970.  Because the latter
provision expressly includes a private right of action, the
Senate Report went out of its way to head off any potential
expressio unius argument by explaining that the provision of a
private right of action in Section 36(b) "should not be read by
implication to affect" the practice of implying a private right
of action under 36(a) (S.R.Rep. No. 91-184, 91st Cong., 1st Sess.
16 (1970), reprinted in 1970 U.S.C.C.A.N. 4897, 4931; see also
Fogel v. Chestnutt, 668 F.2d 100, 111-12 (2d Cir. 1981)).

Defendants contend that two Supreme Court cases of the past
decade or so--Central Bank of Denver, N.A. v. First Interstate
Bank of Denver, N.A., 511 U.S. 164 (1994) and Alexander v.
Sandoval, 532 U.S. 275 (2001)--require a change in the prevailing
practice.  Both cases expressed concern that judges may overreach
by inferring legislative intent from Congress' silence or failure
to act.  But even though the circumstances of this case might
perhaps be reasonably distinguished from Central Bank and
Sandoval, dismissal is required when last month's opinion in
Exxon Mobil Corp. v. Allapattah Servs., Inc., 125 S.Ct. 2611

5

(2005) is added to the mix.[3]

Central Bank criticized the practice of using congressional
inaction to infer acquiescence in the prevailing legal landscape.
In deciding whether Section 10(b) of the Securities Exchange Act
of 1934 encompassed aiding and abetting liability, the Court (511
U.S. at 186) acknowledged that courts had long interpreted
Section 10(b) to cover such liability and that Congress had never
overturned those decisions through amendment.  Even so, Central
Bank, id. at 186-87 ultimately gave little weight to arguments
based on acquiescence because "[i]t does not follow...that
Congress' failure to overturn a statutory precedent is reason for
this Court to adhere to it" (id. at 186).

But other portions of Central Bank make clear that its
rejection of an acquiescence argument was not absolute.  For
example, the Court noted that the relevant committee reports made
only "oblique references to aiding and abetting liability" and
that competing arguments from the legislative history in that
case "would not point to a definitive answer" (id. at 185, 187).
And that of course left open the possibility that different
circumstances might lead to different conclusions.

Section 36(a) clearly presents a different circumstance.  In
stark contrast to the Section 10(b) situation, the legislative

---

[3]  Neither counsel can of course be criticized for
inattention to Exxon Mobil, which was handed down after briefing
on the current motion had been completed.

6

history as to private rights of action under Section 36(a)
contains specific and affirmative statements of intent. Thus the
Court's legitimate concern about implying congressional intent on
the basis of mere inaction or "failure to overturn statutory
precedent" is not in issue here. For that reason, <u>Central Bank</u>
has not itself deterred courts from continuing to imply private
rights of action under Section 36(a)(see, e.g., <u>Nuveen</u>, 1996 WL
328006, at *6).

    <u>Sandoval</u> presents a higher hurdle. Picking up on the
general tone of <u>Central Bank</u>, the Court there (532 U.S. at 287)
quotes this passage from Justice Scalia's concurring opinion in
<u>Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson</u>, 501 U.S.
350, 365 (1991) in addressing the particular issue of private
rights of action and concluding that courts must not imply such
rights in the absence of specific statutory authorization:

> Raising up causes of action where a statute has not
> created them may be a proper function for common-law
> courts, but not for federal tribunals.

Hence restraint must be exercised even though creating a private
right of action might create a good fit with the policy goals of
the statute (<u>id</u>. at 286-87). And it must be exercised even if
the statute was enacted before <u>Cort v. Ash</u>, 422 U.S. 66, 78
(1975), when Congress might reasonably have expected such rights
to be implied freely (<u>Sandoval</u>, 532 U.S. at 287-88).

    In short, <u>Sandoval</u>, <u>id</u>. at 288 establishes that the text of

the statute--and not any "contemporary legal context"--must be
the touchstone of any private right of action.  Because the text
of Section 36(a) does not explicitly include a private right of
action, defendants contend that Sandoval applies and the
previously implied right should be disavowed.  And some post-
Sandoval cases have bought that argument as to provisions of the
Act--one a recent District Court opinion dealing with Section
36(a)(Mutchka v. Harris, No. SACV0534JVSANX, 2005 WL 1414304, at
*4 (C.D. Cal. June 8)).

     But as was true of Central Bank, the principles at play in
Sandoval do not graft seamlessly onto the present circumstances.
In particular, Sandoval's special concern with courts making an
unchecked policy judgment that an implied private right of action
would be consistent with the general purpose of the statute is
not implicated as to Section 36(a).  As to that provision, the
basis for the implied action is not mere congressional silence or
acquiescence, but rather repeated and specific pronouncements of
intent.  Silence in the face of legal context is not the same as
repeated specific statements of intent, and although Central Bank
and Sandoval clearly forbid courts from relying on the former,
the latter might nevertheless remain acceptable even after those
cases because it does not involve unguided judicial
decisionmaking.

     But any such possibility was effectively extinguished by

8

Exxon Mobil, which teaches that even affirmative statements of
specific intent in congressional committee reports are impotent
in the face of unambiguous statutory language. Exxon Mobil
addressed a conflict between unambiguous statutory language and
an unambiguous statement of congressional intent in the course of
resolving whether Section 1367(a) confers jurisdiction in class
actions where some but not all of the class members meet the
amount-in-controversy requirement. Its approach to that conflict
dictates the outcome here.

Section 1367 was adopted in 1990 in direct response to the
year-old decision in Finley v. United States, 490 U.S. 545
(1989). And the House Judiciary Committee Report--which was also
adopted by the Senate--stated expressly that Section 1367(b) was
"not intended to affect the jurisdictional requirements of [28
U.S.C. §1332] in diversity-only class actions, as those
requirements were interpreted prior to Finley" (H.R.Rep. No. 101-
734, 101st Cong., 2d Sess. 29 (1990), reprinted in 1990
U.S.C.C.A.N. 6860, 6875). On that score the Report, id. at 29
n.17 specifically cited Zahn v. Int'l Paper Co., 414 U.S. 291
(1973) as an example of such unaffected requirements. Thus
Congress directly anticipated the question later at issue in
Exxon Mobil and left a "virtual billboard of congressional
intent" as to how that question should be resolved (Exxon Mobil,

9

125 S.Ct. at 2630 (Stevens, J., dissenting)).[4]

Even so, the Exxon Mobil majority resolved the question in precisely the opposite direction. In its view the plain terms of Section 1367(a) overruled Zahn, and no legislative history can undo what the plain language of a statute accomplishes. In short, Exxon Mobil declares that it is impermissible to consult legislative history when the statutory language is unambiguous.

After Exxon Mobil, there is simply no room to imply a private right of action under Section 36(a). Even were Central Bank and Sandoval to be discounted on the basis that they were concerned primarily with interpreting congressional silence, Exxon Mobil forecloses any possibility of using Section 36(a)'s clear legislative history to create a private right of action

---

[4] Despite the above-quoted Committee Report language and despite Justice Stevens' characterization (which is persuasive to this Court, for what little that may be worth), the Exxon Mobil majority said it did not consider the legislative history unambiguous. For example, even though the Committee Report stated that Zahn would remain intact, Justice Kennedy noted for the Court that the Subcommittee Working Paper "observed in a footnote that its proposal would overrule Zahn and that this would be a good idea..." and concluded that "[t]rying to figure out how to square the Subcommittee Working Paper's understanding with the House Report's understanding, or which is more reflective of the understanding of the enacting legislators, is a hopeless task" (Exxon, 125 S.Ct. at 2626-27). It is frankly troubling to this Court to ascribe ambiguity to a mere footnote in a preliminary document such as a subcommittee's working paper, when it is the official Committee Reports that are normally thought of as constituting the official evidence as to the legislative branch's final product. But in all events the Court majority did not rest its outcome on that conclusion, instead making it clear that recourse to the legislative history was not in order "simply because §1367 is not ambiguous" (id. at 2625).

where the unambiguous statutory language creates none. Because
the plain statutory text of Section 36(a) provides a right of
action only for the SEC, the inquiry as to whether a private
right of action exists ends there and must be answered in the
negative. And because that answer leaves Jacobs without standing
to bring suit under Section 36(a), his claim under that provision
must be and is dismissed.

Personal Misconduct

What has just been said is enough to dispatch Jacobs'
Section 36(a) claim. But lest Jacobs think that he was simply
the victim of bad timing because of the interposition of the
Exxon Mobil decision, it is worth a moment or two to explain why
his Section 36(a) claim also fails for the additional reason that
he has not sufficiently alleged "personal misconduct" on the part
of defendants. Jacobs views "personal misconduct" as
encompassing general nonfeasance of a fiduciary duty (J. Mem.
13). But that position is not consistent with either the
legislative history or the statutory text of Section 36(a), both
of which point toward a significantly more limited construction.

As for the legislative history, it does not at all support
the notion that Congress intended Section 36(a) to provide a
general remedy for all breaches of fiduciary duties. As Daily
Income Fund, Inc. v. Fox, 464 U.S. 523, 536 (1984)(quoting Burks
v. Lasker, 441 U.S. 471, 480 (1979)) has explained, Congress'

11

concerns in the Act were much more specific, focusing on "conflicts of interest" and abuse of trust rather than on mere ineptitude:

> Congress adopted the ICA because of its concern with "the potential for abuse inherent in the structure of investment companies."

In light of those concerns, courts have typically read Section 36(a) claims to require "some sort of element of self-dealing" (In re Nuveen Funds Litig., 1996 WL 328006, at *10-12).[5]

In his effort to recast the legislative history to support a broader view of "personal misconduct," Jacobs points to snippets from some committee reports issued during congressional consideration of amendments to the Act. But in each such instance a reading of the full passage in the report, from which he has quoted only selectively, confirms rather than negating Congress' primary concern with conflicts of interest, enrichment at the expense of investors and self-dealing.

Nothing in the legislative history that Jacobs addresses reflects a desire to reach out via Section 36(a) to generic fiduciary breaches that do not implicate such policies. And given that "Congress enacted the ICA in order to insure against

---

[5] Although a 1970 amendment to the Act revised the language of Section 36(a), that revision provides no comfort to Jacobs. Congress there changed the applicable standard from "gross misconduct" to "personal misconduct," but nothing in that change suggests any intention to abandon the established "self-dealing" baseline in favor of a new standard embracing generic breaches of fiduciary duties.

the investment adviser using its position of power to further its
self-interest at the expense of the investment company it
manages" (In re Nuveen Fund Litig., 1996 WL 328006, at *12), the
legislative history--viewed fairly and as a whole--does not
support Jacobs' sweeping expansion of the scope of Section 36(a).

Textual analysis leads to the same conclusion. After all,
the statutory reference to "a breach of fiduciary duty involving
personal misconduct" would be patently redundant if "personal
misconduct" were read to encompass any general breach of a
fiduciary duty. And that would run afoul of the basic principle
that statutory language should be interpreted to avoid
superfluity (see, e.g., Ratzlaf v. United States, 510 U.S. 135,
140-41 (1994)). On its face, then, the statute recognizes the
existence of--but does not itself encompass--some breaches of
fiduciary duties that do not "involv[e] personal misconduct."

Section 36(b)(1), a neighboring subsection of the Act, again
reinforces that distinction:

> It shall not be necessary to allege or prove that any
> defendant engaged in personal misconduct, and the
> plaintiff shall have the burden of proving a breach of
> fiduciary duty.

That section also makes sense only if "personal misconduct" is a
subset of, rather than coterminous with, "a breach of a fiduciary
duty."

At the end of the day, Jacobs' attempt to broaden the reach
of Section 36(a) to include general nonfeasance of a fiduciary

13

duty is unavailing. Congress plainly did not create Section 36(a) as a catchall for any fiduciary breach. For that reason the prevailing caselaw has read "personal misconduct" to require some showing of self-dealing. Jacobs has advanced no such allegations, instead setting out a garden-variety fiduciary claim, which remains the domain of state law.

In sum, not just one but two independent grounds call for the rejection of Jacobs' Section 36(a) claim. It is dismissed.

<u>Section 36(b)</u>

Section 36(b) creates "a fiduciary duty with respect to the receipt of compensation for services." Jacobs urges that a breach of a fiduciary duty while in performance of a service contract for fees violates that provision, so that defendants are "not entitled to any compensation from Plaintiff and the class" (J. Mem. 14).

Jacobs has framed his Section 36(b) claim as a direct action against defendants (J. Mem. 8-11). Because Section 36(b) speaks in terms of an action "by a security holder of such registered investment company on behalf of such company," some courts have read that language as referring to derivative actions (see <u>Burks</u>, 441 U.S. at 477, 484; <u>Olmsted v. Pruco Life Ins. Co.</u>, 283 F.3d 429, 433 (2d Cir. 2002))--or even as limiting the availability of relief under Section 36(b) to derivative actions alone (<u>Mutchka</u>, 2005 WL 1414304, at *3).

14

Such a limited reading might perhaps cut Jacobs' Section 36(b) claim off at the pass. But our Court of Appeals has said that even though the statutory text does not appear to permit direct claims, the determination of what constitutes a claim "should generally draw upon state corporation law" (Boland v. Eagle, 113 F.3d 706, 715 (7th Cir. 1997)). If then Massachusetts law would conceptualize the rights and injuries asserted by Jacobs as direct, Section 36(b)'s language could perhaps accommodate that definition so long as doing so would still be consistent with the Act's general purpose of providing shareholder relief (see Strougo v. Bassini, 282 F.3d 162, 176-77 (2d Cir. 2002)).

But no such inquiry is needed here, for in any event Jacobs' purported Section 36(b) claim is fatally deficient in a key respect: It is clearly outside the scope of that section as defined by Green v. Nuveen Advisory Corp., 295 F.3d 738 (7th Cir. 2002). Green involved a shareholders' suit brought under Section 36(b) against the advisors of a closed-end bond fund on the ground that the advisors' compensation plans contained terms that unlawfully created a financial incentive to increase the fund's leverage without considering whether the fund would benefit. Even if an inherent conflict of interest could be said to exist, Green, 295 F.3d at 743-44 nevertheless held that Section 36(b) would not be the proper avenue for relief unless the plaintiff

15

were to allege that the action was taken in an effort to pump up
fees.[6]

Essentially <u>Green</u> delineated the limits of Section 36(b) by
construing it in connection with Section 36(a): It viewed
complaints about the terms of the compensation agreement as the
province of Section 36(b), whereas "fund mismanagement issues are
within the purview of §36(a)" (<u>id</u>. at 744 n.9). Or put
differently, if a complaint's allegations pertain to a
substantive investment decision rather than to the structure of
the compensation plan, then Section 36(b) is an improper basis
for the claim and a plaintiff should instead "seek recourse under
other sections of the ICA, or alternatively under state law" (<u>id</u>.
at 744 (internal quotation marks omitted)).

Here Jacobs' "real complaint" is that defendants made a poor
management decision by failing to participate in dozens of
settlement agreements for which some fund was eligible, and he
has not alleged any inherent improprieties in the compensation
agreement itself. In terms of the <u>Green</u> dichotomy, that means

---

[6] And that means that if actual abuse exists--for example,
if the advisor increased the fund's leverage (and thus its fees)
even though it knew the fund would suffer--any lawsuit on behalf
of the shareholders would raise two distinct issues: one
pertaining to "the receipt of fees and the compensation
structure," and another pertaining to "the leveraging decision"
itself (<u>id.</u> at 743 n.8).

16

his allegations of mismanagement can be addressed in federal terms only under Section 36(a), if at all.[7]

As a final note, it bears mention that the textual and legislative history arguments previously addressed as to Jacobs' unsuccessful Section 36(a) claim have equal force as to Section 36(b). Only a brief recap is needed in that regard.

As to the statutory text, just as turning Section 36(a) into a catchall for general breaches of fiduciary duty would render the "personal misconduct" term surplusage, turning Section 36(b) into a catchall for breaches of fiduciary duties would render the "compensation for services" language unnecessary. Advisors do not work for free, so any breach of a fiduciary duty will automatically relate to compensation at some basic level. If the intention had been to allow all fiduciary breaches to be remedied under Section 36(b), there would be no need for a special category of "a fiduciary duty with respect to the receipt of compensation for services." But just such a category is

_____

[7] Defendants' related argument that Jacobs' Section 36(b) claim is doomed because it does not allege excessive compensation relative to services rendered goes nowhere. Green, 295 F.3d at 743 n.8 expressly declined to follow other Courts of Appeals that have required specific factual allegations of excessive fees to state a valid Section 36(b) claim. So defendants' attempted reliance (D. Mem. 8-9, D. R. Mem. 11-12) on Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321 (4th Cir. 2001) and Gartenberg v. Merrill Lynch Asset Mgmt., 694 F.2d 923 (2d Cir. 1982)--both of which held that plaintiffs must allege facts relating to the relationship between fees and services and both of which were rejected by Green--is misplaced.

statutorily specified, and that shows the broad interpretation sought by Jacobs is at odds with the statutory design.

As for legislative history, <u>Green</u>, 295 F.3d at 743 (citations omitted) concluded that both Sections 36(a) and 36(b) were motivated by the same preoccupation with self-dealing:

> By passing §36(b), [Congress] attempted to diminish the risk of adviser self-dealing under the predominant industry practice....

Because Jacobs does not allege any form of self-dealing in any respect, the concerns that prompted Congress to amend the Act to add Section 36(b) are absent. In the context of all the factors at play, that also mitigates against expanding Section 36(b)'s scope to cover general breaches of fiduciary duty.

In short, Jacobs' Section 36(b) claim is clearly at odds with <u>Green</u>, and it must be dismissed on that basis alone. Elementary principles of statutory construction as well as analysis of the legislative history highlight additional problems with Jacobs' attempts to extend Section 36(b) to reach the facts that he has alleged. For all of those reasons, his Section 36(b) claim is dismissed as well.[8]

---

[8] Lastly in that respect, because the flaws identified here would not be resolved if Jacobs were to attempt to replead a derivative action, his Section 36(b) claim is dismissed without leave to replead.

## Section 47(b)

Both parties agree that Section 47(b) provides a remedy only for the violation of some other section of the Act (J. Mem. 15, D. R. Mem. 13). Because Jacobs' claims under both Section 36(a) and 36(b) have succumbed, there can be no viable Section 47(b) claim. It too is dismissed.

## State Law Claims

When all federal claims are dismissed before trial, United Mine Workers v. Gibbs, 383 U.S. 715, 716 (1966) authorizes dismissal without prejudice of any remaining state claims so that those claims can be pursued in state court. Indeed, in the absence of countervailing conditions--for example, the presence of one of the three exceptions identified in Wright v. Associated Ins. Cos., 29 F.3d 1244, 1251-52 (7th Cir. 1994)--that course is generally preferred (id.). Accordingly Jacobs' asserted state law claims of negligence and breach of fiduciary duty are dismissed without prejudice.

## Conclusion

Jacobs has failed to bring any proper claim under the Act. Neither Section 36(a) nor Section 36(b) encompasses the garden-variety claim of breach of fiduciary duty that he has asserted. And without a predicate violation under one of those two provisions, Section 47(b) is not in play either. Consequently defendants' Rule 12(b)(6) motion is granted as to all federal

19

claims, which are dismissed with prejudice, while Jacobs' state

claims are dismissed without prejudice.[9]

Milton I. Shadur
Senior United States District Judge

Date:   July 20, 2005

---

[9]   Because this opinion marks the swan song of this Court's
outgoing law clerk Samuel Jordan, III in terms of providing input
at the District Court level (though Sam is currently working on a
draft of a Court of Appeals opinion), this Court would be remiss
if it failed to acknowledge his splendid work throughout the year
now ending.   During the year Sam's work in generating draft
opinions and discharging all of the other clerkship
responsibilities has been impeccable.   Having said that, this
Court hastens to add that if the final work product that has
resulted from its own sentence by sentence (indeed, word by word)
vetting of any of the draft opinions generated by Sam contains
errors, they are to be placed at this Court's doorstep and not
his.

20