

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

MAY 2 7 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| JAMES JACOBS, on Behalf of Himself and All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | |
| ROBERT P. BREMNER, LAWRENCE H. BROWN, JACK B. EVANS, WILLIAM C. HUNTER, WILLIAM J. SCHNEIDER, TIMOTHY R. SCHWERTFEGER, JUDITH M. STOCKDALE, NUVEEN INVESTMENTS, INC., NUVEEN INSTITUTIONAL ADVISORY CORPORATION, INSTITUTIONAL CAPITAL CORPORATION, NWQ INVESTMENT MANAGEMENT COMPANY, LLC, RITTENHOUSE ASSET MANAGEMENT, INC., and JOHN DOES NO. 1 THROUGH 100. ) ) ) ) ) ) ) ) ) ) ) | No. 05C 0143<br><br>Judge Honorable Milton I. Shadur |
| Defendants. ) | |

## NOTICE OF FILING

To:   See Attached Service List

PLEASE TAKE NOTICE that on the 27th day of March, 2005, I had filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, Defendants' Reply Memorandum In Support Of Their Motion To Dismiss, a copy of which is attached hereto and herewith served upon you.

James L. Thompson

J. Kevin McCall (3125685)
James L. Thompson (6199621)
Avidan J. Stern (6201978)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois 60611-7603
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

## CERTIFICATE OF SERVICE

I, James L. Thompson, one of the attorneys for Defendants, hereby certify that I caused the Defendants' Reply Memorandum In Support Of Their Motion To Dismiss to be served upon all counsel on the attached service list by facsimile transmission this 27th day of May, 2005.

_____
James L. Thompson

## SERVICE LIST

Randall K. Pulliam
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, Texas 75219-4281
(214) 520-1181 (fax)

J. Allen Carney
Hank Bates
CAULEY BOWMAN CARNEY & WILLIAMS, LLP
11311 Arcade Drive
Suite 200
Little Rock, Arkansas 72212
(501) 312-8505 (fax)

Marvin A. Miller
MILLER FAUCHER and CAFFERTY LLP
30 North LaSalle Street
Suite 3200
Chicago, Illinois 60602
(312) 782-4485 (fax)



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

MAY 2 7 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| JAMES JACOBS, on Behalf of Himself and All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| ROBERT P. BREMNER, LAWRENCE H. BROWN, JACK B. EVANS, WILLIAM C. HUNTER, WILLIAM J. SCHNEIDER, TIMOTHY R. SCHWERTFEGER, JUDITH M. STOCKDALE, NUVEEN INVESTMENTS, INC., NUVEEN INSTITUTIONAL ADVISORY CORPORATION, NWQ INVESTMENT MANAGEMENT COMPANY, LLC, RITTENHOUSE ASSET MANAGEMENT, INC., and JOHN DOES NO. 1 THROUGH 100, | ) ) ) ) ) ) ) ) ) ) ) ) | No. 05C 0143<br><br>Judge Honorable Milton I. Shadur |
| Defendants. | ) | |

## DEFENDANTS' REPLY MEMORANDUM
## IN SUPPORT OF THEIR MOTION TO DISMISS

In their Motion to Dismiss and supporting memorandum, the defendants cited numerous controlling authorities demonstrating: that plaintiff lacks standing to assert claims involving funds in which he never invested; that plaintiff's claims are derivative rather than direct; and that plaintiff fails to state a viable claim under ICA § 36(b), or any other ICA provision. Remarkably, plaintiff's memorandum opposing dismissal never distinguishes or even acknowledges most of the authorities relied on by the defendants. Choosing to pretend that these controlling authorities do not exist, plaintiff instead relies on general articles discussing the mutual fund industry (Pl. Mem. at 2, 4) and on a few outdated and generally inapposite opinions from distant district courts (Pl. Mem. p. 6-7, 14). As demonstrated below, under the controlling authorities, plaintiff's complaint should be dismissed in its entirety.

## ARGUMENT

**I.    Plaintiff Lacks Standing to Assert the Claims Raised by the Complaint.[1]**

    **A.    Plaintiff fails to establish standing as to funds in which he holds no ownership interest.**

In their initial brief, defendants cited the well-established line of cases in which courts consistently have ruled that a mutual fund investor has standing to assert claims only with respect to those funds in which he actually invested. Plaintiffs frequently have argued that an investment in one fund entitles them to sue all funds in the same family or series of funds. And courts routinely reject those arguments. (See Def. Brief at 3-4.) This Court has ruled on this very issue, refusing to allow a fund shareholder to assert claims against any funds other than the one in which he, personally, invested. (Def. Brief at 4) (citing *Williams v. Bank One Corp.*, No. 03 C 8561, 2003 WL 22964376 (N.D. Ill. 2003).)

In his response, plaintiff ignores these authorities, and instead argues (1) that he has standing to sue not only the fund whose shares he purchased, but all funds within the same

---

[1] The only claim for which plaintiff arguably has standing is his § 36(b) claim against the fund in which plaintiff invested. Although the claim is derivative in nature, ICA § 36(b) expressly permits a fund shareholder to bring suit. As discussed in Section II, however, plaintiff has not asserted a viable § 36(b) claim.

investment trust; and (2) that because plaintiff has standing to sue at least one fund, all further analysis of standing must be deferred until after a class certification hearing is held. Both of those arguments fail.

### 1. Plaintiff cannot sue on behalf of "sister" funds issued by an investment trust.

Plaintiff's basic standing argument is that the Court should not consider plaintiff to be an investor merely in a single fund — the Nuveen Large Cap Value Fund — but, rather, should view the plaintiff as investing in Nuveen funds generally, or at least in the investment trust of which the Large Cap Value Fund is a part. (Pl. Mem. at 5.)[2] The foundation for that argument is plaintiff's assertion that there is a fundamental distinction between "mutual funds," on the one hand, and "investment companies," on the other. (Pl. Mem. at 4.) Based on the asserted fact that the meaningful investment company is the investment trust, not the individual fund, plaintiff argues that he has standing to assert claims relating to all four mutual funds in the relevant Nuveen investment trust.

The law is to the contrary. Although plaintiff cites a handful of authorities in purported support for his argument that mutual funds are not investment companies, case law and his own authorities are to the contrary. David E. Riggs & Charles C.S. Park, *Mutual Funds: A Banker's Primer*, 112 Banking L. J. 757, 758 (1995) ("mutual funds are a type of investment company, as defined by the 1940 Act") (Pl. Mem. at 4); Clifford E. Kirsch, *An Introduction to Mutual Funds*, 1412 PLI/Corp. 251 ("The most popular type of investment company is the open-end management company, typically called the mutual fund."). The Supreme Court, in 1971, described a mutual fund as a registered investment company. *Investment Co. Inst. v. Camp*, 401 U.S. 617, 622-23 (1971). Other courts agree. *In re Eaton Vance Corp. Sec. Lit.*, 220 F.R.D. 162,

---

[2] Plaintiff's memorandum also asserts that plaintiff invested in a second fund, the Nuveen Intermediate Duration Municipal Bond Fund ("NIDMBF"). That allegation is improper as it is not contained in the Complaint, which does not name NIDMBF as a party. Moreover, plaintiff ignores the fact that NIDMBF is a bond fund, not "an open-ended mutual fund with equity security holdings," as required by plaintiff's complaint.

2

164 (D. Mass. 2004) (noting that four of the defendants were mutual funds capable of being sued as "separate corporate entities"); *FMR Corp. and Subsidiaries v. Commissioner of Internal Revenue*, 110 T.C. 402 (T.C. 1998) (clarifying that "regulated investment companies ... are commonly known to the investing public as 'mutual funds'"). Plaintiff's argument that mutual funds are not investment companies has no basis.

More importantly, however, regardless of definitions, courts already have expressly considered, and rejected, plaintiff's argument that the owner of shares in one fund has standing to bring claims that relate to other funds in the same family, series, or investment trust. This Court's holding in *Williams* directly contradicts plaintiff's theory. *Williams*, 2003 WL 22964376. In *Williams*, the plaintiff sought to sue on behalf of multiple funds which were part of a single investment trust. This Court rejected the argument that plaintiff had standing to assert claims relating to funds in which he had not invested even if they were part of the same investment trust. As in *Williams*, plaintiff's bootstrapping argument must be rejected as one that "clearly has nothing at all to commend it." *Id.* at *1.

Defendants' opening brief noted that a different court rejected this same argument in *Herman v. Steadman*, 50 F.R.D. 488, 490 (S.D.N.Y. 1970), another case that plaintiff fails to address. In *Herman*, plaintiff posited several arguments in support of his standing argument, including:

    1.    As a shareholder in one fund plaintiff may maintain a derivative action on behalf of that fund.
    2.    The fund in which plaintiff owns shares may maintain a class action on behalf of itself and the two related funds, and, therefore
    3.    Plaintiff may maintain this action, through his fund, as representative of the class of funds, on behalf of all three funds.

*Id.* The Court rejected all three arguments, characterizing them as an apparent "attempt by plaintiff to lift himself by his own bootstraps, designed to accomplish by indirection a result which it is firmly established cannot be achieved directly." *Id.* at 489. Other courts have agreed that, under the ICA, a shareholder lacks standing to sue funds in which he has not invested,

3

regardless of family or trust affiliations. *Kaufman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 735-38 (3d Cir. 1970); *In re Eaton Vance Corp.*, 220 F.R.D. 162, 170 (D. Mass. 2004); *Weiner v. Winters*, 50 F.R.D. 306, 310-11 (S.D.N.Y. 1970).

Indeed, plaintiff's bootstrapping theories also offend Article III's strict standing requirements, which "are particularly important in the area of securities litigation, in order to curb the risks of vexatious litigation and abuse of discovery." *In re Eaton Vance Corp.*, 220 F.R.D. at 168 (quoting *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1531 (D. Mass. 1991)). Accordingly, plaintiff cannot meet settled standing requirements and his claims related to any funds in which he did not invest should be dismissed.

    **2.    Framing the lawsuit as a class action does not remove Plaintiff's burden of establishing individual standing as to all the Funds on whose behalf he seeks to bring suit.**

Finally, in an effort to create standing where it obviously is lacking, plaintiff claims that since he has standing to assert claims against one fund, the Court should curtail all analysis of standing until after it addresses class certification. Plaintiff claims that "[t]he case law is clear that once a putative class representative has established individual standing, all further standing analysis stops until the class certification stage." *Id.* at 6. Plaintiff bases his argument on "the substantially identical nature of the process ... for filing proofs of claim of the affected funds in the same mutual fund family, and the close interrelationship and juridical links of all the funds and persons and entities in the same mutual fund complex with each other." (Pl. Mem. at 7.)

Plaintiff's argument is unpersuasive. As an initial matter, Article III standing is a jurisdictional threshold issue that must be addressed at the outset of every case. *Raines v. Byrd*, 521 U.S. 811, 820 (1997); *Valley Forge Christian College v. Americans for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). This is why ICA cases, like *Williams*, always address shareholder standing issues *before* turning to class certification. *Williams*, 2003 WL 22964376 (N.D. Ill. 2003).

Plaintiff's argument fares no better when he attempts to rely on the so-called "juridical links doctrine," recognized in *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002), and

4

*Fallick v. Nationwide Mut. Ins. Co.*, (162 F.3d 410 (6th Cir. 1998) — cases that do not even address the issue of whether a fund shareholder has standing to sue related funds whose shares he did not purchase. In *Payton*, the Court began by reaffirming general Article III requirements. Nevertheless, the *Payton* Court permitted a class action to proceed where the class plaintiffs had no dealings with 17 of the 19 defendant counties assessing a challenged "bail fee" to pretrial detainees. *Id.* The Court reasoned that, where all defendants *are following a common statute* — creating a so-called "juridical link" — nothing in the doctrine of constitutional standing precludes use of the class action device. *Id.* at 681-82. The Court went on to note, however, that an attempt by the plaintiff:

> to piggy-back on the injuries of the unnamed class members... would be impermissible, in light of the fact that "a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action."

*Id.* (quoting *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974) (Burger, C.J., dissenting); citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974), and *Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962)).[3]

Cases after *Payton* have demonstrated that the juridical links doctrine represents a narrow exception to general standing principles and the rules governing class certification. Most particularly, in *In re Eaton Vance*, the Court expressly considered, and flatly rejected, the argument that the narrow juridical link exception can create standing for a mutual fund shareholder in a suit against funds in which he did not invest. 220 F.R.D. at 165-69. In *Landmann v. Bann-Cor*, 2003 WL 23742558 (S.D. Ill. 2003), the Court recognized the existence

---

[3] The other case plaintiff cites, *Fallick*, is even less helpful. *Fallick* also involved a challenge to the common methodology a group of defendants admittedly employed in applying a common statute (in that case, ERISA). *Fallick*, 162 F.3d at 423. On that basis, the Sixth Circuit determined that traditional standing requirements could be relaxed. Here, there simply is no common methodology and no uniform, controlling statutory requirements. The reasoning in *Fallick* also has been questioned by later decisions. *In re Eaton Vance*, 220 F.R.D. at 167-68.

5

of the juridical links doctrine, but limited it to situations in which defendants "took part in a similar scheme that was sustained either by a contract or conspiracy, or was mandated by a uniform state rule[.]" *Id.* at \*5; *see also Portis v. City of Chicago*, 374 F.Supp.2d 573, 579 (N.D. Ill. 2004) (juridical links doctrine inapplicable where the defendants are not operating under a uniform rule; holding in *Payton* does not "dispose of [the] long-standing rule ... that standing cannot be acquired through the back door of a class action"). The overwhelming weight of authority rejects application of the juridical links doctrine in anything other than the narrow, *Payton* context. *Landmann*, 2004 WL 1944789 (citing *Krone v. First Nat'l Mortgage Exch.*, No. 01-CV-0691 (S.D. Ill. 2002); *Dunden v. Firstplus Bank*, No. 01-408-GPM (S.D. Ill. 2002); *Faircloth v. Nat'l Home Loan Corp.*, 2003 WL 1232825, at \*4 (M.D.N.C. 2003); *Dash v. Firstplus Home Loan Trust 1996-2*, 248 F. Supp. 2d 489, 505 (M.D.N.C. 2003); *Alexander v. PSB Lending Corp.*, 800 N.E.2d 984, 994 (Ind. App. Ct. 2003)).

Here, the Complaint fails to allege any facts to support an application of the narrow juridical links exception. The ICA cases rejecting plaintiff's standing argument here control.

## II. Plaintiff's Claims Are Derivative And Must Be Dismissed.[4]

In response to defendants' argument that plaintiff's derivative claims must be dismissed because he has failed to comply with necessary procedural requirements, plaintiff complains that defendants have "fail[ed] to cite a single case which holds that this matter cannot properly be brought as a direct action." (Pl. Mem. at 2.) Plaintiff argues that he, and all shareholders, were injured when NAV was depressed by defendants' failure to participate in class action settlements. Contrary to plaintiff's assertion, however, there are numerous cases, many cited in defendants' opening brief, in which courts applying Massachusetts law and construing the ICA

---

[4] Plaintiff claims that defendants have ignored numerous cases holding that an investor may bring a direct action under ICA § 36(b). Pl. Mem. at 8. To the contrary, defendants acknowledged that a direct action is possible under § 36(b) (Def. Brief at 8), but argued that plaintiff has failed to allege the requisite elements necessary to assert a § 36(b) claim.

hold that claims like plaintiff's are derivative in nature. (Def. Brief 5-6.) Pretending that defendants' authorities do not exist will not make them go away.

### A. Plaintiff Failed To Establish That He Sustained A Distinct Injury.

Plaintiff argues that, to show a direct injury, he need establish only: "an injury sustained by the individual investor *or* the breach of a duty owed directly to the individual investor." (Pl. Mem. at 9) (emphasis in original). Massachusetts law, which controls the determination of whether claims are direct or derivative, requires more. "To bring a direct action under Massachusetts law, a plaintiff must allege *an injury distinct from that suffered by shareholders generally* or a wrong involving one of his or her contractual rights as a shareholder, such as the right to vote." *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000) (emphasis added); *Rohrbaugh v. Investment Co. Inst.*, 2002 WL 31100821, *6 (D.D.C. 2002) (clarifying that "under Massachusetts law, there is the additional requirement that a direct suit is possible only upon a showing that a plaintiff's injury" is distinct from that of shareholders as a group). Plaintiff alleges neither an injury distinct from other shareholders nor injury to a contractual right.

The clearest illustration of the derivative nature of plaintiff's claims comes from plaintiff himself. He states that, given the "unique structure" of mutual funds and the fact that the "per share net asset value" (NAV) is computed daily, both he *"and the putative class members* are injured directly by the Nuveen Defendants' actions because had the Nuveen Defendants ensured that the Funds participated in the securities class action settlements, the settlement funds would have increased the total assets held by the Funds and such increase would have been distributed immediately to the then-current investors on a pro rata basis upon the recalculation of the NAV." (Pl. Mem. at 10.)

Plaintiff's description of the purported injury is a hornbook example of a *derivative* injury. Each and every one of the investors suffers the same injury, and not a *distinct* one as required under Massachusetts law. "A shareholder does not acquire standing to maintain a direct action when ... the only injury to the shareholder is the indirect harm which consists of the diminution in the value of his or her shares." *Lapidus*, 232 F.3d at 683 (applying Massachusetts

law). This is precisely why courts in ICA cases routinely rule that claims alleging shareholder injury by diminution of NAV are derivative claims. *See Weiner v. Winters,* 50 F.R.D. 306, 310 (S.D.N.Y. 1970) ("Plaintiff's contention that since each fund is no more than the alter ego of its stockholders due to the 'net asset value' redemption requirements and thus that the stockholders and the funds have been jointly wronged, is without merit"); *Green v. Nuveen Advisory Corp.,* 186 F.R.D. 486 (N.D. Ill. 1999); *In re Nuveen Fund Litigation,* 855 F. Supp. 950, 954 (N.D. Ill. 1994).[5]

### B. Plaintiff failed to comply with procedural and statutory requirements.

Because plaintiff's claims are derivative, he was required to comply with Fed. R. Civ. P. 23.1 and with Massachusetts' "universal demand" statute, which requires that "demand must be made prior to the commencement of every derivative case." Mass. G. L. ch. 156D § 7.42. As clarified by a recent decision, *In re ING Principal Protection Funds Derivative Lit.,* 2005 WL 1107072, *4 (D. Mass. May 9, 2005), courts applying Massachusetts law should "apply the requirement of universal, pre-suit demand to derivative actions brought on behalf of business trusts" as well as corporations. Because plaintiff has made no pre-suit demand, he cannot maintain any claims on behalf of the one fund in which he has invested, requiring dismissal of all claims other than the § 36(b) claim.

### III. Plaintiff Fails to Assert Proper ICA Claims.

#### A. There is No Private Right of Action under ICA §§ 36(a) or 47(b).

The case law is now clear that there is no private right of action under ICA §§ 36(a) or 47(b). Plaintiff's argument that federal courts have long recognized private rights of action

---

[5] The two cases plaintiff cites in support of his argument provide scant support for plaintiff's position. *Strougo v. Bassini,* 282 F.3d 162 (2d Cir. 2002), is unavailing because that the Second Circuit was applying Maryland and not Massachusetts law. *Id.* at 171 (noting that in Maryland, unlike Massachusetts, a shareholder may obtain standing to pursue a direct claim if he alleges "an injury distinct from an injury to the corporation, not from that of other shareholders"). Under *Strigliabotti v. Franklin Resources, Inc.,* 2005 WL 645529 (N.D. Cal. March 27, 2005), plaintiff fares no better. That case applied California law which, unlike Massachusetts law, merely requires that plaintiff allege harm distinct from the corporation, not harm distinct from other shareholders, in order to pursue a direct cause of action. *Id.* at *7.

8

under individual sections of the ICA, including § 36(a), has been directly discredited by recent U.S. Supreme Court jurisprudence, as cited in defendants' opening memorandum. Plaintiff has failed to address this recent Supreme Court authority holding that federal courts should refuse to read a private right of action into a securities statute where, as here, the statute's plain language does not support such a right. *See Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 177, 185-187 (1994) (private rights of action should be based upon express statutory authority; courts should not rely on congressional inaction in the face of prior court decisions implying private rights of action); *see also Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) (past decisions reflecting judicial willingness to make statutory purpose effective in the context of implied rights of action belong to an "ancien regime"); *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 67 n.3 (2001) (Supreme Court has "retreated from [its] previous willingness to imply a cause of action where Congress has not provided one").

Further, plaintiff fails to address on point Seventh Circuit and other persuasive authority cited by defendants. After *Central Bank*, the Seventh Circuit, while not reaching the issue, has expressed doubt as to whether courts properly may imply rights of action under the ICA. *Boland v. Engle*, 113 F.3d 706, 715 n.19 (7th Cir. 1997). Further, the Second Circuit, in *Olmsted v. Pruco Life Insurance Co.*, 283 F.3d 429 (2d. Cir. 2002), following *Sandoval*, refused to imply private rights of action under the ICA. Numerous courts have relied on the analysis in *Olmsted* to find that there is no private right of action under the ICA, including under § 36(a). *See, e.g., DH2, Inc. v. Athanassiades*, 359 F. Supp. 2d 708, 714-15, 720 (N.D. Ill. 2005) (dismissing ICA claim with prejudice after holding there is no private right of action); *White v. Heartland High-Yield Mun. Bond Fund*, 237 F. Supp. 2d, 982, 987 (E.D. Wis. 2002) (refusing to find a private right of action under the ICA).

All of the cases plaintiff cites in footnote 8 of his memorandum either predate the recent *Central Bank*, *Sandoval*, and *Correctional Services* line of cases or specifically have been called into doubt by *Olmsted* and subsequent cases. *Sandoval* explicitly cautioned that such older decisions finding private rights of actions under a lesser standard than now applies belong to an

9

"ancien regime." 532 U.S. at 287. *Olmsted* explicitly rejected almost every case cited by plaintiff in footnote 8, including § 36(a) cases, as belonging to such an "ancien regime." 283 F.3d at 434. As such, plaintiff has failed to cite any authority decided post-*Sandoval* or post-*Olmsted* supporting his claim that a private right of action exists under § 36(a).

Inexplicably, plaintiff even purports to rely on *Sandoval* as support for recognition of a private right of action under § 36(a). However, as discussed above, several courts have relied on the "ancien regime" language from *Sandoval* to find that there is no private right of action under the ICA, including under § 36(a). *See, e.g., DH2*, 359 F. Supp. 2d at 714-15; *Olmsted*, 283 F.3d at 433.[6] No court has interpreted *Sandoval* as supporting an implied right of action under the ICA. There is no private right of action under § 36(a) or § 47(b) and Counts III and V of plaintiff's Complaint should be dismissed with prejudice.

### B. Plaintiff Fails to Plead Personal Misconduct under § 36(a).

Even if Plaintiff could show there is a private right of action under § 36(a), Plaintiff has not pleaded personal misconduct, as required by that section. Even those now discredited cases which recognized private rights of action under § 36(a) adhered to the statutory requirement that a plaintiff allege personal misconduct. Plaintiff fails to respond to any authority cited by defendants regarding the necessity, under § 36(a), of pleading personal misconduct alleging self-dealing or personal impropriety. *See, e.g., Prescott v. Allstate Life Ins. Co.*, 341 F. Supp. 2d 1023, 1029 (N.D. Ill. 2004) (dismissing § 36(a) claim where plaintiff made no allegation of defendant's self-dealing or personal impropriety); *McDonnell v. Allstate Life Ins. Co.*, No 04 C 3076, 2004 WL 2392169, at *2 n.1 (N.D. Ill. Oct. 25, 2004) (same).

---

[6] Plaintiff's reliance on *Gonzaga University v. Doe*, 536 U.S. 273 (2002), is no more helpful. *Gonzaga* held that there can be no private right of action in the absence of clear and convincing congressional intent evidenced in the text and structure of the statute with an unmistakable focus on the benefited class. *Id.* at 283-86. ICA's declaration of policy, 15 U.S.C. § 80a-1, does not begin to make such a showing, as § 80a-1 does not demonstrate clear congressional intent to create a private right of action with an unmistakable focus on the class benefited.

Instead, plaintiff relies on scant authority which either has been rejected by this District or plainly does not support plaintiff's argument that mere nonfeasance or malfeasance can support a claim under § 36(a). Plaintiff cites *Young v. Nationwide Life Insurance Co.*, 2 F. Supp. 2d 914 (S.D. Tex. 1998), and its accompanying citations to legislative history. Apart from being non-binding upon this Court, *Young*'s expansive and unsupported view of § 36(a) has been explicitly rejected by this Court. *See Prescott*, 341 F. Supp. 2d at 1029, stating that "[w]hile other courts have adopted more liberal standards for section 36(a) claims, *see, e.g., Young*, . . . we find that 'personal misconduct' refers to 'misconduct that involves self-dealing by investment company or other insiders.'" (quoting *In re Nuveen Fund Litig.*, No. 94 C 360, 1996 WL 328006, at *11 (N.D. Ill. 1996)).[7] Plaintiff does not and cannot state a claim under § 36(a) and Count III should be dismissed with prejudice.

### C. Plaintiff Fails to Plead a Viable § 36(b) claim.

Plaintiff argues that because he has alleged "systematic breaches of fiduciary duty, the defendants are not entitled to any compensation," so any compensation defendants received is "excessive."[8] (Pl. Mem. at 14.) No cases support such a reading of § 36(b). Indeed, following plaintiff's logic would lead to the ludicrous result that any breach of fiduciary duty would also constitute a breach of § 36(b).

However, as cited in defendants' prior memorandum, the Seventh Circuit and other courts routinely have rejected the argument that a general breach of fiduciary duty is actionable under § 36(b). *See Green v. Nuveen Advisory Corp.*, 295 F.3d 738, 743 (7th Cir. 2002) ("Congress enacted § 36(b) to provide a narrow federal remedy that is significantly more circumscribed than common law fiduciary duty") (citations and internal quotation marks

---

[7] Plaintiff's reliance on *In re Nuveen* is also misplaced. The *In re Nuveen* court also focused primarily on self-dealing, recognizing, however, that "gross neglect" coupled with abdication of responsibility to prevent others' self-dealing could suffice. Here, plaintiff does not allege self-dealing by anyone, or gross neglect of responsibilities by any defendant.

[8] Plaintiff's § 36(b) claim is brought only against Advisor Defendants and Parent Company Defendant.

11

omitted); *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 329 (4th Cir. 2001) (dismissing § 36(b) claim because "[g]eneral breach of fiduciary duty claims which involve merely an incidental or speculative effect on advisory fees are not properly within the scope of Section 36(b)"). The basic requirements for stating a § 36(b) case have been established since the Second Circuit decided *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923, 928 (2d Cir. 1982). Plaintiff fails to comply with those requirements, and his argument that he need not do so should be rejected.

Essentially, conceding that he has no argument here, plaintiff fails to respond to any authority cited by defendants holding that a viable § 36(b) claim must plead excessive fees, that is, compensation disproportionate to services rendered. *See, e.g., Prescott*, 341 F. Supp. 2d at 1029-30; *McDonnell*, 2004 WL 2392169, at *2 n.1; *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d at 328 (4th Cir. 2001).

The cases plaintiff does cite do not support his argument that a general breach of fiduciary duty is compensable under § 36(b). *Rohrbaugh v. Investment Co. Institute*, No. 00-1237, 2002 WL 31100821, at *8-9 (D.D.C. July 2, 2002), dismissed a § 36(b) claim because "[s]ection 36(b) does not apply to every alleged breach of fiduciary duty by an investment advisor" and the plaintiff had "failed to assert any facts alleging a breach of fiduciary duty related to advisory fees." The same can be said about plaintiff's claim. And *Galfand v. Chestnutt Corp.*, 545 F.2d 807, 812 (2d Cir. 1976), permitted a § 36(b) claim where the claim clearly related to excessive advisory fees — the investment advisor had engaged in "a patently one-sided revision of the advisory contract which placed the entire burden of rising costs and a falling market on the Fund." Here, plaintiff has alleged no connection to advisory fees much less one as strong as in *Galfand*. Further, *Krantz v. Prudential Investments Fund Management, LLC*, 77 F. Supp. 2d 559, 564-65 (D.N.J. 1999), dismissed a § 36(b) claim where the plaintiff failed to support his allegation of excessive fees, and his allegation that fund directors entered into invalid compensation agreements with the fund. Here, plaintiff has not even alleged excessive fees or receipt of compensation from invalid compensation agreements with the Fund much less pleaded

12

any factual support for such an allegation. Finally, plaintiff's citation to Illinois and New York state cases and the *Restatement (Second) of Agency* regarding common law breach of fiduciary duty plainly has no relevance to determining whether plaintiff adequately has pleaded a cause of action under § 36(b).

### D.    Plaintiff Concedes § 47(b) Creates a Remedy, Not a Claim, While Failing to Respond to Additional Pleading Defects.

Plaintiff concedes in his memorandum (at page 14) that § 47(b) provides a remedy rather than a cause of action. Thus, plaintiff agrees he cannot invoke § 47(b) as a distinct cause of action, and its assertion as a separate count in plaintiff's Complaint should thus be stricken.[9]

### IV.    Plaintiff Asserts No Viable Claims Against The Individual Defendants or Under State Law.

In their opening memorandum, defendants referred to authorities establishing particular requirements for ICA actions against individuals, especially outside directors. Defendants demonstrated that plaintiffs had failed to allege any of the facts necessary to support claims against individuals. Plaintiff's opposing memorandum neither disputes the legal standards cited by defendants nor provides any explanation as to why his claims against individual defendants should survive. All claims against the individual defendants should be dismissed with prejudice.

In addition, the state law claims should be dismissed because they are derivative in nature and, alternatively, because federal court subject matter jurisdiction is lacking.

---

[9] Plaintiff also fails to rebut defendants' argument that plaintiff lacks standing to pursue a remedy under § 47(b). In *Lessler v. Little*, 857 F.2d 866, 874 (1st Cir. 1988), the court dismissed a claim seeking to void an investment company sales contract under § 47(b) because the plaintiff was not a party to the contract. Here, plaintiff has in no way responded to such authority except to make the bald assertion that Plaintiff need not show independent standing under § 47(b). *Lessler* clearly is to the contrary. Because plaintiff is not a party to any alleged agreements between any Defendants or Funds, plaintiff has no standing to sue under § 47(b).

13

## CONCLUSION

WHEREFORE, for the reasons stated herein, and in the defendants' opening memorandum, defendants respectfully request that this Court enter an order dismissing all of plaintiff's claims with prejudice.

Dated: May 27, 2005

                                      Respectfully submitted,
                                      Defendants

                                      By: _____
                                                One of Defendants' Attorneys

J. Kevin McCall (3125685)
James L. Thompson (6199621)
Avidan J. Stern (6201978)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois 60611-7603
Telephone: (312) 222-9350
Facsimile: (312) 527-0484